IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

|  |  |  |
|---|---|---|
| FOX NEWS NETWORK, LLC and CHRISTOPHER WALLACE, | ) ) ) ) ) | Case No. _____ |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) | **COMPLAINT** |
| ROBIN CARNAHAN FOR SENATE, INC. | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) |  |

Plaintiffs Fox News Network, LLC ("FNC") and Christopher Wallace ("Wallace") (together, "Plaintiffs"), by their attorneys, Lathrop & Gage LLP, for their Complaint herein allege as follows:

**Parties, Jurisdiction, and Venue**

1. In a smear ad against political rival Roy Blunt, Defendant Robin Carnahan for Senate, Inc. usurped proprietary footage from the Fox News Network to made it appear – falsely – that FNC and Christopher Wallace, one of the nation's most respected political journalists, are endorsing Robin Carnahan's campaign for United States Senate. In so doing, Defendant infringed FNC's valuable and proprietary creative expression and used Wallace's image and persona for monetary gain without his permission. This action is brought against Defendant for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*; for invasion of privacy by misappropriation of likeness in violation of Missouri's common law; and for invasion of the right of publicity by misappropriation of identity or persona in violation of Missouri's common law.

2. Plaintiff FNC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York. FNC's sole member is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

3. Plaintiff Wallace is a natural adult person who is a citizen of the District of Columbia.

4. Upon information and belief, Defendant is a mutual benefit corporation that operates as the campaign committee of a candidate for United States Senate, with its last known principal place of business located in St. Louis, Missouri.

5. This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 and 17 U.S.C. §§ 501 *et seq*. The jurisdictional minimum of 28 U.S.C. § 1332(a) is met because Wallace seeks in excess of $75,000 in damages.

6. This Court has personal jurisdiction over Defendant pursuant to the principles of specific and general jurisdiction, based upon Defendant's contacts with the State of Missouri as well as the connection between certain of Defendant's contacts with the State of Missouri and the acts giving rise to the causes of action alleged in this Complaint.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a), 1391(b), and 1400(a), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because the Defendant is subject to personal jurisdiction and may be found in this District.

**Facts**

8. FNC is a news organization and the owner and operator of the Fox News Channel, the country's number one 24-hour cable and satellite television news network. FNC is and, at all

times relevant to the matters alleged in this complaint, was engaged in the business of news production and dissemination.

9. Wallace is a nationally-known, award-winning, and highly respected television news journalist who has hosted the Sunday-morning public affairs program, "FOX News Sunday with Chris Wallace" ("FNS") since 2003. As host of FNS, Wallace has secured interviews with major government figures, including Bill Clinton, George H.W. Bush, Dick Cheney, Condoleezza Rice, Hillary Clinton, Colin Powell, John Kerry, Howard Dean, Richard Gephardt, Joseph Lieberman, John Edwards, Nancy Pelosi, President of Mexico Vicente Fox, Bill Frist, Joseph Biden, California Governor Arnold Schwarzenegger, Dianne Feinstein, and John McCain. Wallace is well known for his coverage of political news, including regional and national elections. He has reported live from major election events, including Election Night, the presidential debates, the Democratic and Republican conventions, the New Hampshire Primary, and the Iowa Caucuses. Before joining FNC, Wallace served as a senior correspondent for ABC's "Primetime Thursday" and as a substitute host for "Nightline." He has also worked for NBC News, where he served as the chief White House correspondent and anchored "Meet the Press" and the Sunday edition of "NBC Nightly News." Wallace has won every major broadcast news award for his reporting, including three Emmy Awards, the Dupont-Columbia Silver Baton, and the Peabody Award.

10. On January 15, 2006, FNS featured an interview by Wallace of Roy Blunt, then a Member of the United States House of Representatives from Missouri who was vying for the position of House Majority Leader (the "FNS Interview"). An application for the United States copyright registration for the FNS Interview is on file with the United States Copyright Office under Case No. 1-487233081.

11.     The FNS Interview, which features Wallace's likeness and persona, unique vocal commentary and reporting by Wallace, a graphic display of facts that Wallace used to question Blunt about whether he was the best candidate for House Majority Leader (the "Graphics"), and the selection of distinctive and stylized camera angles, is a creative expression of news events that was the product of editorial discretion and substantial journalistic skills, resources, and creative energies.

12.     FNC has always been and continues to be the sole owner and proprietor of all rights, titles, and interests in the copyrights in the FNS Interview. The copyright in the FNS Interview is presently valid and subsisting and was valid and subsisting at all times affecting the matters complained of herein.

13.     Upon information and belief, in or about September 2010, Defendant began disseminating on the Internet and on television an advertisement entitled "Clean up the house" (the "Carnahan Ad") that infringes FNC's copyright in the FNS Interview by reproducing an essentially verbatim copy of a 30-second clip of both video footage and voice-over commentary appropriated from the FNS Interview.

14.     The infringing advertisement, which runs for a total of 32 seconds, begins with Robin Carnahan's imprimatur, "I'm Robin Carnahan, and I approve this message" and the prominent display of the address for Defendant's website. The Carnahan Ad then displays video footage from the FNS Interview, which features Wallace's image and persona and displays the legend "FOX News 1/15/06," followed by several seconds of voice-over commentary by Wallace taken from the FNS Interview. The Carnahan Ad misappropriates the entirety of the special Graphics that FNC had developed for the FNS Interview.

4

CC 2298917v1
Case 4:10-cv-00906-GAF   Document 1   Filed 09/15/10   Page 4 of 11

15. Defendant reproduced Wallace's distinctive vocal performance and news reporting and FNC's editorial selection of graphic images and stylized camera angles. In so doing, Defendant violated FNC's right to the exclusive use of its creative products in contravention of its copyright in the FNS Interview. It also misappropriated Wallace's likeness and persona.

16. The Carnahan Ad has been disseminated on television and was also available for anyone in the world to view on the Defendant's website, robincarhahan.com, where the misappropriated Graphics – including a copy of the Fox News logo – were prominently displayed as the focal point of the website's home page. Immediately to the right of the link to the Carnahan Ad, visitors were asked to "DONATE TODAY" to Defendant. At the bottom of the page featuring the link to the Carnahan Ad, visitors were further propositioned to "BUY NOW" bumper stickers and t-shirts from the "TEAM ROBIN STORE" available online. In so doing, Defendant used the FNS Interview and Wallace's likeness and persona with the intent to acquire commercial gain.

17. Defendant's verbatim reproduction of footage from the FNS Interview, without consent, is a use that: (1) allows Defendant to profit commercially without paying the traditional price; (2) causes substantial harm to the value of the FNS Interview, and (3) was based upon the unique expressive content of the FNS Interview.

18. Defendant's unauthorized use of the FNS Interview footage in its Carnahan Ad also devalues the original work. FNC is a news organization that has not endorsed a candidate in the 2010 Missouri senatorial race. The value of its news reporting is based in part upon the public's faith in the accuracy and integrity of those reports. By including the FNS Interview in

an advertisement endorsing a specific political candidate, Defendant harmed the value of the original work by compromising its apparent objectivity.

19. Indeed, upon information and belief, it was FNC's position as a news organization and Wallace's stellar reputation that motivated Defendant to infringe FNC's copyrighted work. Seeing the verbatim footage from the FNS Interview gives viewers of the Carnahan Ad the false sense that the Carnahan Ad is credible and accurate. The Carnahan Ad is designed to make it appear as if Wallace – a trusted journalist – is instead speaking as a campaign operative. The defendant's conduct in stealing only certain footage from the FNS Interview is also false and misleading: Wallace's tough questions were included, but Blunt's answers and explanations were not. The value, therefore, and the purpose of the Carnahan Ad's use of the copyrighted FNS Interview footage were based on FNC's unique expressive news reporting.

20. Based on the aforementioned facts, FNC is informed and believes, and on that basis alleges, that Defendant knowingly and willfully directly infringed FNC's copyright in the FNS Interview.

## AS AND FOR A FIRST CAUSE OF ACTION BY FNC

(Copyright Infringement)

21. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 20 of this Complaint as if fully set forth herein.

22. The FNS Interview is an original creative work that is copyrightable. FNC owns all of the interests and rights in the FNS Interview. FNC has filed with United States Copyright Office an application for copyright registration in the FNS Interview.

23. Defendant infringed FNC's copyrights by using without permission clips and voice-over commentary from the FNS Interview in the Carnahan Ad, which was disseminated publicly via the Internet and on television in or about September 2010.

24. Defendant's infringement is willful in nature; indeed, Defendant acknowledged in the Carnahan Ad that the FNS Interview was owned by "FOX News."

25. Defendant's use of the FNS Interview footage without consent was commercial in nature, and therefore was presumptively unfair.

26. Upon information and belief, Defendant intends to continue to disseminate the offending Carnahan Ad in the future, thus continuing to infringe FNC's copyright.

27. By reason of the foregoing act of copyright infringement and the likelihood of continued copyright infringement by Defendant, FNC has sustained and will continue to sustain substantial damages in an amount presently unknown but to be determined at trial.

28. Further, by reason of the Defendant's infringement and threatened future infringement, FNC has sustained and, if the Defendant's acts are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists.

## AS AND FOR A SECOND CAUSE OF ACTION BY WALLACE

(Invasion of Right of Privacy/Misappropriation of Another's Likeness)

29. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. Defendant used Wallace's likeness in the Carnahan Ad on the Internet and on television.

31. Defendant used Wallace's likeness in the Carnahan Ad without his consent.

32. Defendant used Wallace's likeness in the Carnahan Ad to obtain some benefit to itself, including, but not limited to: bringing attention to Defendant's business; creating the impression that Wallace endorsed Defendant; and attracting visitors to donate to Defendant and to purchase its goods.

33. Defendant used Wallace's likeness in the Carnahan Ad for the purpose of appropriating to Defendant's benefit the commercial and other values associated with Wallace's likeness.

34. Wallace sustained injury as a result of Defendant's misappropriation of his likeness because Defendant's acts, *inter alia*: deprived him of his interest in the exclusive use of his own identity; intruded upon Wallace's private self-esteem and dignity; and caused him emotional or mental distress and suffering.

## AS AND FOR A THIRD CAUSE OF ACTION BY WALLACE

(Invasion of Right of Publicity/Misappropriation of Identity or Persona)

35. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. Defendant used Wallace's likeness in the Carnahan Ad on the Internet and on television.

37. Defendant's use of Wallace's likeness in the Carnahan Ad was without Wallace's consent.

38. Defendant's use of Wallace's likeness in the Carnahan Ad used Wallace's likeness as a symbol of his identity and public persona as a well-respected journalist and an objective and expert political commentator.

39. Defendant commercially exploited Wallace's likeness in the Carnahan Ad by using Wallace's likeness for advertising purposes and for its own purposes and benefit.

40. Defendant intended to create an impression that Wallace is associated with Defendant and that Wallace endorses Defendant by using Wallace's likeness in the Carnahan Ad.

41. Defendant used Wallace's likeness in the Carnahan Ad to attract attention to Defendant's efforts to raise funds for its own use and to Defendant's products.

42. Defendant used Wallace's likeness in the Carnahan Ad to raise funds and to sell products on Defendant's website.

43. Defendant used Wallace's likeness in the Carnahan Ad, which was disseminated on television and on the Internet, with the intent to obtain a commercial advantage.

44. Wallace sustained injury as a result of Defendant's misappropriation of his likeness because Defendant's acts: deprived Wallace of his interest in personal dignity and autonomy; secured for Defendant the commercial value of Wallace's fame; used Wallace's likeness and persona in a harmful fashion that diluted the value of his public persona; deprived Wallace of his work in creating a publicly recognizable persona; created the false impression that Wallace was not an objective reporter but rather had endorsed Defendant; and resulted in Defendant's unjust pecuniary gain.

**WHEREFORE**, Plaintiffs respectfully pray that this Court grant Judgment to Plaintiffs as to the above causes of action, as follows:

1. Adjudging and decreeing that Defendant has infringed the copyright in this suit; has invaded Wallace's right of privacy by misappropriating his likeness; and has invaded Wallace's right of publicity by misappropriating his identity or persona;

2. Immediately and permanently enjoining and restraining Defendant, its officers, agents, servants, employees, and those in active concert or participation with them or any of them, from any further copyright infringement of the FNS Interview and any further misappropriation of Wallace's likeness, identity, or persona; and

3. Immediately and permanently enjoining and restraining Defendant, its officers, agents, servants, employees, and those in active concert or participation with them or any of them, from airing, entering into agreements for the airing of, or otherwise promoting the dissemination of the Carnahan Ad; and

4. Requiring Defendant to deliver up to Plaintiffs for destruction any and all goods in their possession or under their control, including but not limited to master copies of the Carnahan Ad, that infringe on FNC's copyright and/or misappropriate Wallace's likeness, identity, or persona; and

5. Immediately and permanently enjoining and restraining Defendant from any future unauthorized use of the FNS Interview and of Wallace's likeness, identity, or persona; and

6. Awarding Plaintiffs damages, including without limitation statutory damages, compensatory damages, and/or punitive damages for the infringement of FNC's copyright and for the misappropriation or Wallace's likeness, identity, or persona, in an amount presently unknown but to be determined at trial; and

7. Requiring Defendant to account to FNC for any and all profits derived by them through activities which infringe FNC's copyright; and

8. Requiring Defendant to disgorge any fees, profits, or money to Plaintiffs by which it has been unjustly enriched; and

9. Granting Plaintiffs their costs and disbursements of this action, including reasonable attorneys' fees; and

10. Awarding Plaintiffs pre-judgment and post-judgment interest on each and every damage award; and

11. Granting such other, further, or different relief as the Court deems just and proper.

Dated:  Kansas City, Missouri
         September 15, 2010

>Respectfully submitted,
>
>LATHROP & GAGE LLP
>
>By: /s/ Bernard J. Rhodes
>    Bernard J. Rhodes         (MO29844)
>    2345 Grand Boulevard, Suite 2800
>    Kansas City, Missouri 64108
>    Tel.: (816) 460-5508
>    Fac.: (816) 292-2001
>    E-mail: brhodes@lathropgage.com
>
>    *Attorneys for Plaintiffs Fox News Network, LLC and Christopher Wallace*